## JAMES A. LUSK *vs.* E. C. BELOTE.

### March 28, 1876.

**Inn-keeper—Liability for Loss of Goods of Guests who are Travellers.**—In August, September and October, 1872, defendant was keeping "The Park Place Hotel," a public inn and boarding-house, in the city of St. Paul. On September 20, 1872, the plaintiff, his wife and four children being inmates of the hotel, a gold watch belonging to plaintiff, and certain articles of jewelry belonging to two of the children mentioned, were stolen from the room occupied by the plaintiff and his family. The jewelry consisted of "ordinary articles of wearing apparel and ornaments of the plaintiff's two daughters," to whom the same belonged, and was brought to the hotel when they came there. The plaintiff's wife and six children became inmates of the hotel on August 7, 1872, and (with the exception of two children who left a few days before the theft) remained there until some time in October following. The plaintiff was not a resident of this state, but at the time when they came to the hotel his wife and children were living, and for three or four years previous had been living, in St. Paul, sometimes keeping house and sometimes staying at a hotel or boarding-house, the plaintiff being in the habit of making them an occasional visit as often as two or three times a year. The plaintiff arrived at St. Paul and became an inmate of the hotel about September 10, 1872. *Held*, 1. An inn-keeper is by the common law responsible for the loss, in his inn, of the goods of a traveller who is his guest, except when the loss arises from the negligence of the guest, or the act of God, or of the public enemy.

**Same—Rule where the Guest is not a Traveller.**—2. But this strict liability exists only in favor of travellers. As respects the loss of the jewelry, the defendant's liability depends upon the *status* of the plaintiff's two daughters, to whom the same belonged, and they were not *travellers*.

**Traveller Presumed to Continue such.**—The evidence showing that the plaintiff came to defendant's inn as a traveller, and was received as such, his *status* as a traveller must be presumed to have continued, unless something appears affirmatively to the contrary.

**Same—Presumption not Rebutted by Facts of this Case.**—This presumption is not overthrown by proof of an agreement by which plaintiff was to pay special rates for himself and family, lower than those ordinarily charged for transient guests, nor by the fact that he remained in the inn for a month.

Appeal by defendant from an order of the district court for Ramsey county, *Wilkin,* J., presiding, refusing a new trial.

*E. C. Palmer,* for appellant.

*Bigelow, Flandrau & Clark,* for respondent.

BERRY, J.  In August, September and October, 1872, the defendant was keeping "The Park Place Hotel," a public inn and boarding-house, in the city of St. Paul.  On September 20, 1872, the plaintiff, his wife and four children being inmates of the hotel, a gold watch belonging to plaintiff, and certain articles of jewelry belonging to two of the children mentioned, were stolen from the rooms occupied by the plaintiff and his family.  The jewelry consisted of "ordinary articles of wearing apparel and ornaments" of the plaintiff's two children, to whom the same belonged, and was brought to the hotel when they came there.  The plaintiff's wife and six children became inmates of the hotel on August 7, 1872, and (with the exception of two children who left a few days before the theft) remained there until some time in October following.  The plaintiff was not a resident of this state, but at the time when they came to the hotel his wife and children were living, and for three or four years previous had been living, in St. Paul, sometimes keeping house and sometimes staying at a hotel or boarding-house, the plaintiff being in the habit of making them an occasional visit as often as two or three times a year.  The plaintiff arrived at St. Paul and became an inmate of the hotel about September 10, 1872, and remained about four weeks.

An inn-keeper is by the common law responsible for the loss, in his inn, of the goods of a traveller who is his guest, except when the loss arises from the negligence of the guest, or the act of God, or of the public enemy.  2 Kent, 592–597 ; *Shaw* v. *Berry,* 31 Me. 478 ; *Sibley* v. *Aldrich,* 33 N. H. 553 ; *Hulett* v. *Swift,* 33 N. Y. 571 ; *Wilkins* v. *Earle,* 44 N. Y. 172 ; 1 Chit. Cont. (11th Am. ed.) 674–677, and

notes. But this strict liability exists only in favor of *travellers*. As the articles of jewelry stolen belonged to the plaintiff's children, being their " ordinary articles of wearing apparel and ornaments," and were brought to the defendant's inn when such children came there and became inmates thereof, the liability of defendant, as respects their loss, must depend upon the *status* of the persons to whom the same belonged.

Considering the length of time during which, and the manner in which, they had been living in St. Paul before they became inmates of the defendant's inn, they must be regarded as, *in fact*, dwellers in and inhabitants of St. Paul. There is no reason why they may not properly be so regarded, although their domicile was, *in law*, in another state. They were certainly not travellers in any just sense of the word, for persons who have dwelt in a city no larger than St. Paul do not become travellers by changing their dwelling place from one part of it to another. It is manifest, therefore, that, as respects the jewelry stolen, the verdict cannot be sustained ; for, upon the evidence, it is obviously based upon the defendant's supposed liability for the loss of the same under the rule above mentioned—a rule, as we have seen, applicable only as between an innkeeper and a traveller.

In reference to the plaintiff, it appears that he was not a resident of this state, and that he came to defendant's inn from some place without this state upon a visit to his family. There is no room, upon the evidence, to doubt that he came to defendant's inn, and was received there, as a traveller, and in no other character. His purpose evidently was to make a flying visit to his family, and a merely temporary stay in St. Paul, where he remained about a month only. Under such circumstances, unless something appears affirmatively to the contrary, his *status* as a traveller, like any other *status*, once shown to exist, is to be presumed to have continued. Neither the agreement by which he was to pay

special rates for himself and family, lower than those ordinarily charged for transient guests, nor the fact that he remained in the inn for a month, nor, so far as we discover, any other fact which appeared in the case, furnish any evidence that his character was changed from that of a traveller to that of a boarder. *Julie* v. *Cardinal*, 35 Wis. 118, and cases cited. There was, therefore, no error in the instruction given to the jury to this effect. As respects, then, the plaintiff's watch, we see no reason why the evidence was not sufficient to charge defendant for its loss.

These are all the points which we deem it necessary to consider. For the insufficiency of the evidence in the case to sustain the verdict as respects the jewelry stolen, irrespective of other grounds, the defendant's motion to set aside the verdict and for a new trial should have been granted by the court below. As, however, upon the evidence, the plaintiff would appear to be entitled to recover for the watch, and the testimony proving its value at $200.00 is not affected by any testimony to the contrary, the plaintiff may, within twenty days from notice of the filing of this opinion, remit all of the verdict except $200.00, and take judgment in the court below upon the verdict so reduced; otherwise, the order denying the motion to set aside the verdict and for a new trial is reversed.