J. A. JOHNSON v. CHADBOURN FINANCE COMPANY.[1]

May 15, 1903.

Nos. 13,555—(45).

**Innkeeper.**

Where the proprietor advertises and represents to his guests that he is keeping a public hotel or inn for the entertainment of transients, by means of signs upon the outside of the building, by notices posted in the rooms, as an inn keeper, as provided in G. S. 1894, § 7997, et seq., and also advertises and represents that there is a café in connection with his sleeping apartments, he is bound thereby, and cannot avoid the duties and responsibilities of a public hotel and inn keeper by simply showing that the café, in the same building, is owned and operated by other persons, and that he has no hand or voice in its management.

**Liability to Guests—Fire.**

All losses of property by guests at a public hotel or inn by fire are prima facie due to the negligence of the proprietor, but he may discharge

[1] Reported in 94 N. W. 874.

and relieve himself of liability by showing that these losses happened by an irresistible force or unavoidable accident, such as a fire originating upon premises over which he had no control, without fault or negligence on his part.

Action in the district court for Hennepin county to recover $1,335 for the loss of personal baggage and property destroyed by fire while plaintiff was a guest at defendant's hotel. The case was tried before Pond, J., and a jury, which rendered a verdict in favor of defendant. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Reversed, and new trial granted.

*Harrison E. Fryberger,* for appellant.
*Wadsworth & Wadsworth,* for respondent.

An inn is "A house where a traveler is furnished with everything he has occasion for while on his way." 1 Bouvier Law Dict. (Rawle's Rev.) 1045.

The above is "the true definition," says Story on Bailments, § 475; Thompson v. Lacy, 3 B. & A. 286. The same authority also holds: "To constitute an inn there must be some provision for the essential needs of a traveler upon his journey, namely, lodging as well as food." Lewis v. Hitchcock, 13 The Reporter, 299; Story, Bailm. § 475; People v. Jones, 54 Barb. 311, 316; Carpenter v. Taylor, 1 Hilt. 193. A coffee house or mere eating house is not an inn. Doe v. Laming, 4 Camp. 77.

Innkeeper is defined as "The keeper of a common inn for the lodging and entertainment of travelers and passengers, their horses and attendants, for a reasonable compensation." 1 Bouvier Law Dict. (Rawle's Rev.) 1045; also Story, Bailm. § 475. "Any one who makes it his business to entertain travelers and passengers and provide lodging and necessaries for them, their horses and attendants, is a common inn keeper." Edwards, Bailm., § 450. It is not necessary that he should furnish accommodations for horses and carriages. But it is necessary that he furnish more than mere room and lodging. There is no decision of the common law or of our American courts that holds that the renting of

rooms for lodgings merely constitutes the renter an innkeeper. Edwards, Bailm., § 454.

One who lets out rooms to lodgers, not supplying them with meals, and leases the basement to another person, who keeps a restaurant as an independent establishment from which access may be had from the lodging rooms, is not an innkeeper, and has no lien as such upon the property of his lodgers. Cochrane v. Schryver, 12 Daly, 174; Cromwell v. Stephens, 2 Daly, 15; Dansey v. Richardson, 3 El. & Bl. 144; Carpenter v. Taylor, 1 Hilt. 193; Kopper v. Willis, 9 Daly, 460.

The first requisite of liability is that the relation of inn keeper and guest should have existed between the parties at the time the loss occurred. Such liability cannot be imposed in any case where the relation in fact never existed. 16 Am. & Eng. Enc. (2d Ed.) 530; Haff v. Adams (Ariz.) 59 Pac. 111; Pinkerton v. Woodward, 33 Cal. 557; Russell v. Fagan, 7 Houst. (Del.) 389; Healey v. Gray, 68 Me. 489; Amey v. Winchester, 68 N. H. 447; Coykendall v. Eaton, 55 Barb. 188; Arcade v. Wiatt, 44 Ohio, 32.

This court has repeatedly held an innkeeper's lien does not attach to goods in possession of one who is received as a boarder and not as a guest or traveler. Singer Mnfg. Co. v. Miller, 52 Minn. 516; Lusk v. Belote, 22 Minn. 468; Ross v. Mellin, 36 Minn. 421.

COLLINS, J.

The defendant in this action, a corporation, was the proprietor of what was known as the "Hotel Vendome," in the city of Minneapolis. The plaintiff and his wife, residents of Morris, in this state, while on their way to Florida, stopped for a few days at the Vendome, making preparations for their journey. They were undoubtedly transients, and were in this building when a fire occurred, February 7, 1902. They lost a quantity of personal property, such as wearing apparel and ornaments, and brought this action to recover the value of the same.

There was a general verdict for defendant, and the jury also answered three questions submitted to them by the court. By these answers they found that the defendant was not guilty of negligence by reason of its failure to remove or cause to be removed the plaintiff's property from the building at the time of the fire.

They also found that the plaintiff was not guilty of negligence contributing to the loss by reason of his failure to remove the goods from his room, while the third answer related to the value of the goods. Thereafter the plaintiff, upon a settled case, made a motion for judgment notwithstanding the verdict, or for a new trial. This motion being denied, plaintiff appealed.

The complaint alleged that the defendant was a hotel or inn keeper, and also that the goods were lost through its negligence. The answer denied that the establishment in question was a hotel or inn, and thereby the burden of proof was cast upon the plaintiff to show, by competent testimony, that the defendant was such a proprietor, as alleged in the complaint. Upon the testimony the court below charged the jury that the establishment was not a hotel or an inn, within the meaning of the law, and that the defendant was not a hotel or an inn keeper. The view taken by the trial court seems to have been that the establishment was shown to be nothing but a lodging house, and then the rule was applied governing common lodging-house keepers—in effect, that the plaintiff could not recover unless the defendant failed to exercise ordinary care at the time of the fire, and was thus guilty of negligence by reason of which the goods were lost. In instructing the jury upon the subject of defendant's negligence, the trial court also charged that the burden of proof was upon the plaintiff to show that the defendant was negligent.

1. The first question which we wish to consider grows out of the fact that the court charged the jury that the building in question was not a hotel or an inn, and that the defendant was not a hotel or an inn keeper. The facts in relation to the character of the establishment were undisputed. The building was originally fitted up for offices in the upper stories, with stores upon the ground floor. One of these stores had been used as a restaurant, the proprietors being Regan Bros. The defendant finally converted the upper stories of the building into first-class sleeping apartments. The office was upon the ground floor in one of the store-rooms before mentioned. The business was conducted, concededly, as is the business in any large, first-class hotel, except that the defendant itself did not furnish meals for the guests. It had

no dining room or café. A door opened from the general entrance or hallway into the restaurant or café before mentioned, but the defendant had nothing to do with the management or operation of the café.

The establishment did not come within the definition sometimes given to the term "hotel" or "inn," and yet it answered the description of Petersdorf, who, in his Abridgment, says that an inn is a house for the reception and entertainment of all comers for gain. That the Vendome received and entertained all comers, to the extent of supplying them with rooms, for compensation, is not disputed. Justice Best describes an inn as a house, the owner of which holds out that he will receive all travelers and sojourners who are willing to pay a price adequate to the sort of accommodation provided, and who come in a state in which they are fit to be received. Other writers have defined an inn as a house where a traveler is furnished with everything he has occasion for while on his way, and that in an inn there must be provision for the essential needs of a traveler upon his journey—lodging as well as food. An inn has often been defined as a place for the lodging and entertainment of travelers and passengers, their horses and attendants, for a reasonable compensation. There is no doubt that circumstances and changes in modes of life and innovations in methods of traveling have very much affected and qualified the character of hotels and inns, and consequently the definitions thereof, of fifty years ago. At that time an inn was a house where the entertainment was for both man and beast—for one quite as much as for the other. In these days very few people travel with horses, and the old hostelries have almost entirely disappeared. Few hotel keepers in the state, in places of any size, have barns of their own in connection with their hotels.

With these changes in the ways of the traveling public, and innovations in hotel keeping, the definitions which have heretofore prevailed must also be changed and modified. In many cities all of the first-class places for entertainment of travelers are conducted upon the European plan solely—the rooms being furnished and rented, and the guests permitted to dine where they please—

or are kept upon both European and American plans. Usually there is a café owned and operated by the hotel proprietor, but, as stated, in this particular instance there was none. Just what should be held if a case presented itself where there was no café or restaurant in connection with such an establishment, we are not prepared to say; but here there was a café in the building—access thereto being afforded from the office and sleeping apartments without going out of doors—and it was shown by the testimony that on the letter heads furnished by the defendant to the guests of its house it was stated that there was a "first-class café in connection; popular prices." And it is not disputed that the Regan Bros.' café was referred to in this advertisement. The building itself was a hotel, according to large signs upon the outside thereof—three or more in number—announcing it as the "Hotel Vendome" and as an "European Hotel." It also appeared from the proofs that the defendant had availed itself of the innkeepers' law (G. S. 1894, § 7997, et seq.), by posting notices in each room, whereby the proprietor attempted to restrict its liability to the occupants of the rooms in case of loss of property. If the establishment was not a hotel or inn, it was masquerading as one; and we are of the opinion that its proprietor would have promptly resented a charge made, before the fire, that it was nothing but a lodging house.

Upon the ground of public policy, we think it must be held that where the proprietor of such an establishment as this was advertises and represents to his guests that he is keeping a hotel or inn—a public place for the entertainment of transient guests—by means of signs upon the outside of the building, posts notices in the rooms as an inn keeper, and advertises and represents that there is a café in connection with his sleeping apartments, thus representing to them that he furnishes not only rooms, but meals, he must be bound thereby, and cannot avoid his duties and responsibilities as a hotel or an inn keeper by simply showing that the café in the same building is owned and operated by other persons, and that he has no hand or voice in its management.

2. The second question in this case, of importance, is as to the

extent of an inn keeper's liability. That he has been held to a very stringent, unyielding rule in this respect is manifest from an examination of the cases. The policy of the law has been to render him liable to the same extent as a common carrier of goods for hire, although there has been much doubt expressed as to this extraordinary responsibility in some cases. That the law requires of him extraordinary diligence in many respects—such as the care of his guests' baggage or other property which has been confided to his actual custody—there can be no doubt.

In the case of Lusk v. Belote, 22 Minn. 468, the common-law rule was adopted, and it was held that a landlord is responsible for the loss in his inn of the goods of a traveler who is his guest, except when such loss arises from the negligence of the guest, or the act of God or of the public enemy. There the guest's goods had been stolen from his room. It must be admitted that there has been a strong indisposition upon the part of courts to admit of any relaxation, just or unjust, of this rule, and it has been applied to all classes of public hotels. In Edwards on Bailments, § 462, it is stated as a reason for so stringent a rule that it was established in a period when theft and robbery were quite frequent, and inn keepers were thought to have many opportunities, and some temptations, to combine and connive with ruffians and others in the plunder of strangers, and that it has been continued in more modern times on the ground of public utility and convenience. In two cases the reason for the continuance of such a doctrine has been discussed with great vigor, and, under the circumstances there appearing, not improperly. Hulett v. Swift, 33 N. Y. 571; Wilkins v. Earle, 44 N. Y. 172. But the fact is that, in nearly all of the cases supporting the doctrine of absolute liability, unexplained thefts or losses of property were involved. No distinction was made between goods stolen, and goods destroyed by fire for which the landlord was in no manner responsible. That there might be a well-defined distinction does not seem to have been thought of.

But it must be admitted that the logical consequence of the strict rule is that no discrimination can be made between losses

arising from thefts by other guests, or by servants, and those which result from such an entirely distinct cause as an accidental fire. However, in a number of states there has been a departure, and there has been adopted what is called the "rule of prima facie liability," and there are also decisions in England to the same effect. The doctrine is thus stated in 16 Am. & Eng. Enc. (2d Ed.) 536: "An inn keeper is prima facie liable for the loss of goods in his charge, but may discharge himself by showing that it happened by irresistible forces, though not the act of God or a public enemy, or by inevitable accident, or otherwise, without fault or negligence on his part;" a number of cases being cited in support thereof. Cutler v. Bonney, 30 Mich. 259, and Merritt v. Claghorn, 23 Vt. 177, are very strong opinions in support of this rule, and in them the subject is discussed with much force and ability. Vance v. Throckmorton, 5 Bush (Ky.) 41, is also a strong case in support of this view. See also cases cited in note to 16 Am. & Eng. Enc. (2d Ed.) 538.

Conceding that the rigorous rule before stated was just and necessary in its day, there never was any reason or foundation for it in cases where the loss was occasioned by an accidental fire, for which the landlord was not responsible, and when no negligence in connection therewith could be attributed to him. In the present case the fire originated upon premises not occupied by the defendant, and over which it had no control, although in the same building. From the record, it does not appear that the fire spread into that part of the building occupied by the defendant through its negligence; and, as before stated, the jury found, in answer to a special question, that the defendant was not negligent in any manner which contributed to the loss. With these conflicting rules in respect to the liability of the proprietor of a hotel or inn, we are justified in stating one to govern this case which is more just and sensible than the common-law doctrine, before referred to; but we are not quite willing to go to the extent that some of the courts have, and absolve the landlord from all liability in case of loss through thefts if he can show that they were unavoidable accidents, or were otherwise committed without fault or negligence on his part. We do not think that the landlord of a public

hotel or inn should in every case of loss be held responsible to the same extent as a common carrier, and that under some circumstances they do not stand upon precisely the same footing. Public policy does not require it, nor is such a doctrine reasonable.

We therefore adopt what is known as the "rule of prima facie liability." All losses of property incurred by guests at a public hotel or inn by fire are prima facie due to the negligence of the proprietor, but he may discharge or relieve himself from liability by showing that the loss happened by an irresistible force or unavoidable accident, such as a fire originating upon premises over which he had no control, without fault or negligence on his part. This doctrine does not infringe upon the common-law rule, which makes him responsible for all thefts from within his house, or unexplained, whether committed by guests, servants, or strangers, upon the general principle that an inn keeper guaranties the good behavior of all who may be under his roof—particularly his servants. The doctrine which we adopt, and which must control this case, is that an action cannot be maintained against a hotel or inn keeper by a guest to recover for property lost by fire which was occasioned by unavoidable casualty or superior force, and without any negligence on the part of the inn keeper or his servants. A landlord is not liable for a loss by fire happening through a cause beyond his control. He must be reasonably diligent under the circumstances known to exist after the fire breaks out, but it is not necessary that he should be extremely vigilant or cautious.

This rule is more in accordance with our views of justice, and will, we believe, commend itself to all. As before stated, the jury found that there was no negligence on the part of either plaintiff or defendant. If this cause had been properly submitted to the jury, and the jury had been instructed along the lines herein indicated, judgment could properly have been ordered for the defendant, but such was not the case. The trial court was in error not only as to the nature of the establishment kept by the defendant, but it also charged that the burden of proof was upon the plaintiff to show that the defendant was negligent. Such is not the rule, under the doctrine of prima facie liability, herein indorsed.

3. The question of the extent of defendant's liability (that is, for what goods the plaintiff may recover) is not before us. It does not seem to have been in controversy in the court below, for, without objection, the jury was permitted to find the value of all the goods lost by plaintiff. By not discussing this question we do not want to be understood as indorsing this view. That question can be considered after it has been passed upon by the court below.

Order reversed and new trial granted.