## MARY E. ASSELTYNE v. FAY HOTEL.[1]

May 31, 1946.

No. 34,185.

[1]Reported in 23 N. W. (2d) 357.

*F. J. Rosemeier,* for appellant.
*Stone, Manthey & Carey,* for respondent.

MAGNEY, JUSTICE.

Defendant owned and operated the Fay Hotel in the city of Virginia. Plaintiff occupied one of its rooms. On March 27, 1943, fire destroyed the hotel, and plaintiff lost her belongings. She seeks recovery of her loss from defendant. The case was tried to the court without a jury and resulted in findings for defendant. Plaintiff appeals from the order denying her motion for a new trial and from the judgment. As the time to appeal from the order had expired before the appeal was taken, it is ineffectual, and the only appeal to be considered is the one from the judgment.

Plaintiff was a teacher in the Junior College of the city of Virginia. Except for a few months during the school year of 1939-

1940, she had taught continually in the public schools of Virginia since 1930. Her parental home had been in Minneapolis, where her parents had lived in rented premises. Her father died in 1920 and her mother in 1941. A married sister with her husband continued to live in the apartment after the mother's death. Plaintiff, her sister, and a brother supported the parents, and while the mother was alive plaintiff assisted in maintaining the home. There is nothing in the record to indicate that after the death of the mother she assisted financially in maintaining the home which her sister occupied. The telephone was in the mother's name in the January 1942 telephone book. The listing was changed to plaintiff's name in July 1943. Although she did some traveling, her summer vacations were spent primarily in Minneapolis. She voted in Virginia in the presidential elections of 1932, 1936, and 1940, and in the state and city elections in 1936, 1938, 1939, 1940, and the last time in February 1942. She was registered under the permanent voters registration system of the city of Virginia and was a duly qualified voter therein. However, when she returned to Virginia in the fall of 1942, she moved into another voting precinct and had not at the time of the fire made the necessary transfer at the registration office. In prior years plaintiff had lived in different rooms and apartments in the city of Virginia. Sometimes she lived in furnished apartments and at other times she used her own furniture. During the school year of 1934-1935 she lived at the Fay Hotel. She had sent her furniture to Minneapolis in the spring of 1942. Some of it was at the home occupied by her sister, and the rest of it was placed in storage.

When plaintiff left Virginia in the spring of 1942, she made no arrangements for a place to live during the next school year. Before she left Minneapolis for Virginia in September, she telephoned the Fay Hotel and made a reservation, and when she arrived she registered at the hotel. After she had been there about two days she inquired if any extra rooms were available for a longer stay. She was told there were and was shown several. She selected one and agreed to pay a rental of $22 a month for it, the price asked.

The transient rate for this room would have been $1.75 a day. She moved in and stayed there until the fire. She paid the rent before the 10th of each month on bills rendered on hotel stationery. There was no understanding as to termination of the arrangement. She received the same services that were furnished guests from day to day, except that the bed linen was changed only twice a week.

The hotel had 80 rooms. Between 15 and 18 of these were rented out to permanent guests. Teachers and mining engineers had been staying at the hotel and in these rooms for many years. These so-called permanent guests made their arrangements with the clerk or with Mrs. Lerch, the manager. In any case, those persons who came in as permanent guests were thus selected or chosen. They were permitted to furnish rooms as they saw fit. Plaintiff moved in under such arrangements. In addition to her clothing, books, and traveling bags, she brought with her into the room an afghan, typewriter and typewriter desk, electric clock, portable radio, desk lamp and shade, and two other lamps.

Plaintiff lived at the hotel under the above arrangement until March 27, 1943, when the building was totally destroyed by fire. She lost her belongings. In September 1943 she enlisted in the army and did not return to Virginia that fall to teach.

Plaintiff contends that she was a transient guest and as such entitled to the benefits of the law applicable in such case. Defendant insists that she was a lodger or boarder and that the rules of law covering that relationship apply. The trial court found that plaintiff was not a guest but a roomer or lodger.

Minn. St. 1941, § 157.01, subd. 2 (Mason St. 1940 Supp. § 5903), defines a hotel as follows:

"Every building or structure or enclosure, or any part thereof, kept, used as, maintained as, or advertised as, or held out to the public to be an enclosure where sleeping accommodations are furnished to the public, whether with or without meals, and furnishing accommodations for periods of less than one week, shall be deemed an hotel."

Subd. 4 of § 157.01 (§ 5903) defines a lodginghouse as follows:

"Every building or structure, or any part thereof, kept, used as, maintained as, advertised as, or held out to be, a place where sleeping accommodations are furnished to the public as regular roomers, for periods of one week or more and having five or more beds to let to the public shall be deemed a lodging house."

■ The business of a hotel and that of a boardinghouse and lodginghouse may be carried on in the same building. The legal relationship between the operator and his customer-occupants will therefore vary, depending upon whether the customer is a transient guest or a boarder, roomer, or lodger. In Lusk v. Belote, 22 Minn. 468, we find such a situation. There, some members of a family occupying rooms at a hotel were treated as boarders or lodgers and one member as a transient guest. In Ross v. Mellin, 36 Minn. 421, 32 N. W. 172, the defendant, in the same house, carried on the business of a hotel and also a boardinghouse. In 28 Am. Jur., Innkeepers, § 8, it is stated:

"* * * there is nothing inconsistent or unusual in a house of public entertainment having a double character, being simultaneously a boardinghouse and an inn or hotel. In respect to those who occupy rooms and are entertained under special contract it may be a boardinghouse; and in respect to transient persons, who, without a stipulated contract, remain from day to day, it is an inn, tavern, or hotel. The distinction between certain types of modern boardinghouses, or similar establishments, and inns or hotels is frequently a question of fact to be determined from the circumstances of the case."

And in *Id.*, § 66, we find this statement:

"* * * To those who sojourn in his house as boarders or lodgers and not as guests, the proprietor of an inn stands in the same relation as the proprietor of a boarding or lodging house stands to his boarders or lodgers, and his liability is the same."

The Fay Hotel was or could have been simultaneously a boarding-house or lodginghouse and an inn or hotel, thus a house of public entertainment having a double character.

In 4 Williston, Contracts (Rev. ed.) § 1066, the author makes this statement:

"* * * An innkeeper is one who holds himself out to the public as prepared to accommodate all travellers with the necessities for a temporary sojourn. This definition excludes *. * * one who furnishes lodgings without food, one who keeps a boarding house for those planning to make a stay of long duration."

And in *Id.*, § 1067, it is stated:

"* * * It is, therefore, essential to determine who is a guest. He is a temporary sojourner who for a price paid, or to be paid, is furnished with either food or lodging or who is received for the purpose of being so served. One who makes an inn his home permanently or under a special contract for a long period is a boarder and not within the definition of a guest."

Whether, as to this plaintiff, defendant operated an inn or a boardinghouse or lodginghouse depends on the facts surrounding her occupancy. Defendant's duty to her depended on the nature of the relationship.

Under the common law, an innkeeper is responsible for the loss in his inn of the goods of a traveler who is his guest, except when the loss arises from the negligence of the guest, an act of God, or of the public enemy. This court has adopted that rule (Lusk v. Belote, 22 Minn. 468; Ross v. Mellin, 36 Minn. 421, 32 N. W. 172; Johnson v. Chadbourn Finance Co. 89 Minn. 310, 94 N. W. 874, 99 A. S. R. 571; Knutson v. Fidelity Mut. L. Ins. Co. 202 Minn. 642, 279 N. W. 714), except in a case where the transient guest at a hotel suffered loss of property by fire. In such a situation, this court adopted the rule of prima facie liability. In Johnson v. Chadbourn Finance Co. 89 Minn. 318, 94 N. W. 876, 99 A. S. R. 571, the court said:

"\* \* \* All losses of property incurred by guests at a public hotel or inn by fire are prima facie due to the negligence of the proprietor, but he may discharge or relieve himself from liability by showing that the loss happened by an irresistible force or unavoidable accident, such as a fire originating upon premises over which he had no control, without fault or negligence on his part. This doctrine does not infringe upon the common-law rule, which makes him responsible for all thefts from within his house, or unexplained, whether committed by guests, servants, or strangers, upon the general principle that an inn keeper guaranties the good behavior of all who may be under his roof—particularly his servants. The doctrine which we adopt \* \* \* is that an action cannot be maintained against a hotel or inn keeper by a guest to recover for property lost by fire which was occasioned by unavoidable casualty or superior force, and without any negligence on the part of the inn keeper or his servants."

■ The duty of proprietors of boardinghouses and lodginghouses toward their boarders and lodgers is quite different from that of an innkeeper to his transient guests. By the great weight of authority, both in this country and in England, the duty of proprietors of boardinghouses and lodginghouses is to exercise care for the safety of the property belonging to their boarders and lodgers. The question of liability is not affected by the fact that the proprietor is also an innkeeper and entertains transient guests as well as boarders and lodgers. 28 Am. Jur., Innkeepers, § 115; Holstein v. Phillips, 146 N. C. 366, 59 S. E. 1037, 14 L.R.A.(N.S.) 475, 14 Ann. Cas. 323.

■ It will be seen from the foregoing that defendant's duty to plaintiff depended upon the relationship between the parties, and what that relationship was depends upon the evidentiary facts. Plaintiff claims that she was a transient guest at the hotel. The burden is upon her to prove her claim, namely, that the relation of innkeeper and guest existed between them. 28 Am. Jur., Innkeepers, § 145.

■ A recital of the facts has already been made. On those facts, the trial court found that plaintiff was a roomer or lodger at the hotel and not a transient guest. It is clear that during the first two days at the hotel she was a transient guest. Then she contracted with defendant specially for her further accommodations. Defendant had a right to select its permanent guests and therefore a right to refuse to contract with plaintiff. It chose to accept her. She was given the choice of one of several rooms where she could stay, presumably for the school year. A monthly rate, less than half the transient rate, was quoted her. She moved in with her traveling bags and wardrobe, plus several articles not usually brought into a hotel room by transients. She paid her rent once a month. If plaintiff had been a transient guest, defendant would have been bound, without making a special contract therefor, to provide for her to the limit of its facilities at a reasonable price. In Halsey v. Svitak, 163 Minn. 253, 255, 203 N. W. 968, 969, the court said:

"In Nelson v. Johnson, 104 Minn. 440, 116 N. W. 828, 17 L.R.A. (N.S.) 1259, the court drew a distinction between lodging houses and hotels, saying that the proprietor of a private lodging house is not bound to receive all who apply, but may select his guests and contract specially with each, while a hotel keeper must receive all who come in a situation in which they are fit to be received. This seems to be the doctrine in other jurisdictions. 32 C. J. p. 529; 14 R. C. L. p. 493."

The above rule is stated in 28 Am. Jur., Innkeepers, § 8, as follows:

"While there is a certain similarity between inns and hotels on the one hand and boarding, lodging, and rooming houses on the other, the two classes of houses differ from each other by definition in certain fundamental characteristics. The principal distinction is that in the case of houses of the latter class, the proprietor deals with his customers individually with respect to terms and accommodations and exercises the right to reject any or all applicants at his pleasure, while in the case of inns and hotels the proprietor

deals with the public generally on the basis of an implied contract and may not arbitrarily refuse to receive as a guest one who is entitled to be so received, as has been pointed out in prior sections."

In 28 *Id.*, § 14, it is stated:

"It is difficult, if not impossible, to define with precision who is a guest as distinguished from a boarder. It is rather a question of fact in each case to be ascertained by a consideration of all the circumstances thereof. The length of the stay, the existence of a special contract, the rate or method of payment, and the possession or nonexistence of a home or permanent residence elsewhere are all material, but not necessarily controlling, factors to be considered in determining the question."

Plaintiff stayed at the hotel for a special purpose not connected with passage or travel. Defendant selected her as a guest and contracted with her specially. She declared herself a resident of Virginia so she could vote. Virginia was clearly her legal residence and her place of employment, and it would seem that she could not properly claim that she was a resident of any other city. Her only place of residence in Virginia was the Fay Hotel, and it is evident that when she rented the room she intended to stay there for the school year, although there was no agreement to that effect. After the first two days at the hotel, she could no longer be considered a transient guest.

It is true that neither the length of time one remains nor any agreement as to price of accommodations necessarily deprives one of his status of guest. Lusk v. Belote, 22 Minn. 468, 470. These features must be considered in connection with the other facts which create the relationship.

We are of the opinion that the trial court did not err in holding that plaintiff was not a transient guest but a lodger or roomer.

■ If a lodger or roomer, the burden of proof was upon plaintiff to prove that defendant was negligent. The trial court found that the evidence failed to establish that defendant was negligent.

Without giving a detailed recital of the evidence, it is sufficient to say that the record sustains that finding.

Judgment affirmed.