Jackie L. DONALDSON, Court Appointed
Trustee for the Heirs of Lynette
Robarge, Appellant,

v.

YOUNG WOMEN'S CHRISTIAN
ASSOCIATION OF DULUTH,
Respondent.

No. C6–94–1115.

Court of Appeals of Minnesota.

Jan. 10, 1995.

Review Granted March 14, 1995.

Laurence J. Klun, Ely, for appellant Jackie L. Donaldson.

Jon K. Iverson, Paul D. Reuvers, Erstad & Riemer, P.A., Minneapolis, for respondent Young Women's Christian Ass'n of Duluth.

Considered and decided by LANSING, P.J., and KLAPHAKE and AMUNDSON, JJ.

## OPINION

KLAPHAKE, Judge.

In March 1991, Lynette Robarge died of an overdose of prescribed medication while in a room she rented from respondent Young Women's Christian Association of Duluth (the YWCA). Her mother, appellant Jackie L. Donaldson, Court–Appointed Trustee for the Heirs of Lynette Robarge (appellant), brought this wrongful death action against the YWCA. The complaint alleges that the YWCA was negligent because it failed to provide reasonable care to Robarge, was inattentive to her needs, and did not respond when other residents sought assistance for Robarge.

The YWCA moved for summary judgment, arguing it owed no duty to Robarge. The district court agreed, and concluded that no special relationship existed between the YWCA and Robarge which would impose a duty on the YWCA to aid or assist Robarge. This appeal is from the grant of summary judgment to the YWCA. Because we conclude the YWCA had a duty under the facts of this case, we reverse.

## FACTS

The YWCA owns and operates a 97–room complex in Duluth. In February 1991, the YWCA approved Robarge's application for a room. Robarge thereafter signed an agreement to rent room 317 on a monthly basis.

The rental agreement contained terms specifying that a resident "may be evicted immediately and without prior notice" if he or she violated any terms of the agreement, that certain "building rules" were part of the agreement, and that the YWCA could make "reasonable changes" to those rules at any time. Also in effect at the time of Robarge's residency was an "Evening Non–Tenant Entry Policy," which restricted a resident's visitors between the hours of 10:30 p.m. and 7:30 a.m.

The YWCA front desk provided a number of services to residents. The desk was staffed 24 hours a day by employees who had access to room keys, took telephone messages, and maintained a mail slot for each resident. The staff also maintained a wallboard at the front desk to verify the residents' presence in the building. Residents who left the building or did not wish to be disturbed could hang a tag over their room number. The YWCA instructed residents to report any disturbances or problems to front desk employees who were expected to use their judgment as to the appropriate action.

Between March 22 and 23, 1991, several residents heard Robarge moaning and crying in her room. They reported several times to YWCA employees that Robarge was in distress and needed assistance. The employees failed to check on Robarge. Employee Elliot Ricehill finally telephoned one of Robarge's

friends, who came to the YWCA and found Robarge dead in her room at approximately 7:25 p.m. on March 23. Robarge died after taking an overdose of prescribed medications. Some evidence suggested that Robarge may not have intended to commit suicide, but was merely undertaking a suicide "charade."

Ricehill was on duty at the front desk during much of March 23. Robarge and Ricehill had been sexually involved, but Ricehill had broken off his relationship with Robarge several days before her death. Ricehill was aware that Robarge had attempted suicide in the past by cutting her wrists after she and a boyfriend had broken up.

When the YWCA moved for summary judgment, it admitted that Robarge was suffering distress while in her room on March 22 and 23, 1991; that it became apparent to several residents that she needed assistance; that this need for assistance was reported to the YWCA; and that the YWCA did not immediately respond to these reports. In granting summary judgment to the YWCA, the district court reasoned that the YWCA is statutorily defined and licensed as a lodging house, that the relationship between the YWCA and Robarge was that of landlord and tenant, and that no special relationship existed which would impose a duty on the YWCA. Appellant thereafter moved for reconsideration. In denying appellant's reconsideration motion, the court noted:

> The Court once again has reviewed the file and memorandums and the Court still feels that there is nothing additional to show that [Robarge] was not in exclusive possession of her room on a month-to-month tenancy basis. The Court feels that there is a landlord/tenant relationship existing.

This appeal followed.

## ISSUES

I. Should this court grant the YWCA's motion to strike hearsay and unsworn statements in appellant's brief?

II. Did the district court err in granting summary judgment?

## ANALYSIS

### I.

■ The YWCA requests that this court strike portions of appellant's brief which rely on the unsworn statements of two YWCA residents and on alleged hearsay statements contained in the police and autopsy reports. *See Walker v. Wayne County, Iowa,* 850 F.2d 433, 434 (8th Cir.1988) (in summary judgment proceeding, court should consider only evidence admissible or useable at trial), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 783 (1989). The residents' statements were signed and witnessed; the fact that they were unsworn should not defeat their admissibility at this early stage of the proceedings, particularly when appellant has since obtained depositions from both witnesses covering the same topics. *See Lundgren v. Eustermann,* 370 N.W.2d 877, 881 (Minn.1985) ("technical" defect does not necessarily preclude consideration of evidence). The YWCA initially submitted the police reports in support of its motion for summary judgment; the YWCA did not seek to redact or strike any statements contained in those reports prior to submitting them, and cannot now challenge appellant's use of those statements. The autopsy report does not contain any information relevant to the issue decided here, which is whether the YWCA owed Robarge a duty. The YWCA's motion to strike this material is therefore denied.

■ The YWCA also requests that this court strike all references in appellant's brief and appendix to materials submitted in connection with appellant's motion to reconsider. Technically, the materials appellant submitted in support of her motion to reconsider are not part of the record. *See Dalco Corp. v. Dixon,* 338 N.W.2d 437, 440 (Minn.1983) (where trial court did not extend time to complete discovery or file additional documents, appellate court precluded from considering materials submitted after summary judgment hearing). In denying the reconsideration motion, however, the district court stated that it had "once again reviewed the file," suggesting that it considered the additional materials submitted by appellant. Under these circumstances, these materials may be considered part of the record. *Cf.* Minn.

R.Civ.App.P. 103.03 (on appeal from judgment, court may review any order affecting judgment). The YWCA's motion to strike this material is therefore denied.

## II.

Summary judgment may be granted when there are no genuine issues as to any material facts and either party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. In considering such a motion, the district court must view the evidence in the light most favorable to the nonmoving party. *Sauter v. Sauter*, 244 Minn. 482, 484–85, 70 N.W.2d 351, 352 (1955).

A defendant generally has no duty to aid or protect another person, even if he realizes or should realize that action on his part is necessary. *See* Restatement (Second) of Torts § 314 (1965). A duty to take affirmative action may arise, however, out of certain special relationships. *See id.* at § 314A. Before imposing a duty on a defendant to aid or protect another, a court must examine whether a special relationship existed and whether the resulting harm was foreseeable. *Lundgren v. Fultz*, 354 N.W.2d 25, 27 (Minn.1984). While the existence of a legal duty is generally an issue of law for the court to determine, close questions on the issue of foreseeability are fact issues which a jury should decide. *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn.1985); *Lundgren*, 354 N.W.2d at 28.

Special relationships have been found to exist between parents and children, masters and servants, certain possessors of land and licensees, common carriers and customers, innkeepers and guests, hospitals and patients, or custodians of people with dangerous propensities. *Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165, 168 (Minn.1989); *Delgado v. Lohmar*, 289 N.W.2d 479, 484 (Minn. 1979). These relationships all involve some degree of dependence or of mutual dependence. Restatement § 314A, cmt. b. Control is also an important consideration, particularly in cases involving a duty to protect. *Id.* at § 315.

Appellant argues that the district court erred in characterizing the relationship

between the YWCA and Robarge as that of landlord and tenant. We agree. To determine whether a special relationship existed, the parties and the district court examined Minnesota statutes and regulations, which classify the YWCA as a "lodging house." *See* Minn.Stat. §§ 157.01–.14 (1990 & Supp. 1991); Minn.Stat. §§ 327.70–.76 (1990). This classification is consistent with case law, which examines whether an individual is a permanent roomer or lodger and not a transient guest. *See Asseltyne v. Fay Hotel*, 222 Minn. 91, 98, 23 N.W.2d 357, 361–62 (1946).

It is unclear, however, whether the relationship between a lodging house and a lodger is a special relationship giving rise to a duty to aid. Indeed, some authorities indicate that the liability of a lodging house for personal injuries to a lodger is the same as that of an innkeeper. 43A C.J.S. § 20, at 834 (1978) (citations omitted). The ultimate question is one of policy, and may involve the expectations and intentions of the parties. *See Erickson*, 447 N.W.2d at 168–69; *Pietila v. Congdon*, 362 N.W.2d 328, 333 (Minn. 1985).

Viewing the facts in the light most favorable to appellant, we conclude that a special relationship existed between the YWCA and Robarge. The YWCA maintained control over many aspects of the relationship, including restricting visitors, taking telephone messages, maintaining mail slots, having access to room keys, and maintaining a wallboard to verify residents' presence in the building. The YWCA assumed certain responsibilities, including instructing residents to report disturbances to the front desk and instructing front desk employees to take action they deemed appropriate. The relationship between the YWCA and Robarge thus involved some degree of control on the part of the YWCA and dependence on the part of Robarge.

The evidence further shows that the resulting harm in this case was foreseeable. Ricehill, the front desk employee on duty that day, knew Robarge personally and knew of her prior suicide attempt following a breakup with a boyfriend. Ricehill and other YWCA employees also had actual knowledge, based upon reports from other residents, that Robarge was in distress and possibly

needed assistance. Under these circumstances, we conclude that the YWCA owed Robarge some duty to aid or assist.

■ The YWCA argues that even if a special relationship existed, Robarge's suicide was a superseding, intervening act. This argument, however, precludes a lodging house's liability for a lodger's suicide under any set of facts. *See Sneider v. Hyatt Corp.,* 390 F.Supp. 976, 981 (N.D.Ga.1975) (in action against hotel following guest's suicide, court rejected argument that suicide is intervening cause). While suicide may affect the element of foreseeability in the analysis of whether a duty was owed or whether the breach of that duty was a proximate cause of the injuries, it should not automatically be considered an intervening cause.

We therefore conclude that the district court erred in granting summary judgment to the YWCA. Because the YWCA is no longer the prevailing party on its summary judgment motion, it is not entitled to costs and disbursements under Minn.Stat. § 549.04 (1992). Thus, we need not decide whether the costs and disbursements awarded to the YWCA were reasonable.

### DECISION

The grant of summary judgment to the YWCA is reversed.

**Reversed.**

LANSING, Judge (dissenting).

I agree with the majority's holding that Lynette Robarge's rental arrangement with the Y.W.C.A. exceeded a conventional landlord-tenant relationship, but I do not agree that these additional attributes give rise to a legal duty to prevent Robarge from suicide. The existence of a legal duty is generally an issue for the court to decide as a matter of law. *Larson v. Larson,* 373 N.W.2d 287, 289 (Minn.1985). Whether a duty exists depends not only on the relationship between the parties, but also on the foreseeability of harm to others. *Erickson v. Curtis Inv. Co.,* 447 N.W.2d 165, 168–69 (Minn.1989). Although the Y.W.C.A. may have had a duty to protect Robarge from foreseeable harm by others, I do not believe that public policy favors extending that duty to the facts of this case. *Erickson,* 447 N.W.2d at 169 (public policy is major consideration in identifying legal duty as element of negligence claim).