SARA F. ROBERTSON, as Administratrix, etc., of WALTER A. ROBERTSON, Deceased, Respondent, *v.* CHARLES B. TOWNS HOSPITAL and CHARLES B. TOWNS, Appellants.

Second Department, May 11, 1917.

**Negligence — failure of hospital attendants to guard against suicide of patient — evidence raising question for jury — duties of private hospital corporation and attendants — failure to prove whether hospital was operated by corporation or by individual defendant.**

Action against an incorporated hospital and an individual as codefendants to recover for the death of a patient who was being treated for alcoholism and who committed suicide by breaking the glass of a lavatory window and leaping therefrom. There was no evidence that the decedent had exhibited indications of suicidal mania, but there was evidence to the effect that he suffered from an alcoholic delusion that he was threatened with bodily injuries from an imaginary foe from whom he had an impulse to escape. Evidence examined, and *held,* to raise a question for the jury as to whether the physician or nurse in attendance should not, in the exercise of the requisite skill and care, have foreseen the casualty and have protected the decedent from the unguarded window in the bathroom.

It is the duty of the owner of a sanatorium conducted for private gain to use reasonable care and diligence not only in treating but in safeguarding a patient, measured by the capacity of the patient to provide for his own safety. And to this end physicians and nurses possessing reasonable learning and skill such as is ordinarily possessed by persons similarly engaged must be employed, and they must act with reasonable care and diligence.

A verdict for the plaintiff against both the corporation and the individual defendant will be reversed, however, where there was no evidence upon which the jury could base a finding that the hospital was operated by the corporation and by the individual defendant jointly as master of the negligent servant.

APPEAL by the defendants, Charles B. Towns Hospital and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Nassau on the 28th day of March, 1916, upon the verdict of a jury for $12,500, and also from an order entered in said clerk's office on the same day denying defendants' motion for a new trial made upon the minutes.

*I. R. Oeland* [*Owen W. Bohan* with him on the brief], for the appellants.

*Henry A. Uterhart,* for the respondent.

STAPLETON, J.:

An administratrix of a decedent recovered damages against a corporation and an individual for neglect which caused her intestate's death. The decedent periodically was a heavy drinker of intoxicating liquor. A day came when his family physician, finding him suffering from alcoholism, advised him to go to a sanatorium for treatment. He was admitted on that day, March 11, 1915. His treatment was paid for. The person who received him and with whom the arrangements were made said good care would be given him. He was assigned to a room on the third floor, which he shared with a patient named Munnich. The one window in that room was guarded with a metallic grating. There is no evidence that between the date of his admission and the following Sunday, March 14, 1915, he was afflicted with delirium or was of unsound mind. On the afternoon of that Sunday he was visited by his wife, who remained with him until about six o'clock. About eight o'clock a doctor and a nurse attached to the hospital found him in the room with an uplifted pitcher in his hand, after he had driven forth his room mate, Munnich. The doctor's attention was attracted to the incident by having heard, while in his own room, a few feet away, a sound like " rattling the screen; " that is, the metallic grating on the window. To the doctor and the nurse decedent falsely charged Munnich with an attempt to kill him. He was thereupon persuasively subdued and his fear apparently dispelled. He then started for the lavatory, which he had been accustomed to use daily. He was required to wait an instant while another person, who was using it, came out. He entered,

closing the door leading to it. The female nurse, seeing him go in, asked the doctor to accompany him. The doctor was about to do so instantly when he heard a crash. He rushed in. He saw the body of the decedent falling through the window, which was of ground opaque glass and was not guarded. He grasped the decedent but could not hold him, and he fell to the ground. A few minutes afterwards decedent died from the injury thus caused.

There is no evidence that he had suicidal mania. An effort to show by opinion evidence that he had delirium tremens was unsuccessful. In answer to a hypothetical question, a skilled witness, who had not seen the patient, testified to an opinion that the patient was mentally affected by alcohol and that he had delusions. The fact that the patient jumped through the window was a help to the doctor in forming that opinion. Suicide is not among the tendencies of those suffering from the delusions to which the doctor referred. One of the delusions is that the patient feels that something is going to happen to him. The doctor testified: " The majority of cases I have come in contact with they are afraid somebody is after them. They are either chasing them with a gun, ax or a knife. They have fear always somebody is after them and they are trying to escape. They have fear of being killed or injured." The judgment of the patient is poor. In reciting the foregoing, we have been summarizing evidence, and not stating propositions necessarily sound.

It is the duty of the owner of a sanatorium conducted for private gain to use reasonable care and diligence not only in treating but in safeguarding a patient, measured by the capacity of the patient to provide for his own safety. In the discharge of this duty, physicians and nurses possessing that reasonable degree of learning and skill that is ordinarily possessed by persons similarly engaged must be employed, and they must act with reasonable care and diligence. (*Hogan* v. *Hospital Company,* 63 W. Va. 84, cited in *Stone* v. *Eisen Co.,* 219 N. Y. 205.)

The case is barren of evidence that conscious suicide should have been foreseen. There is, however, evidence that the patient had a delusion that his room mate had a design to kill him, and it is inferable that he shook the window screen

in his bedroom in an attempt to escape from his imaginary assailant. There is evidence that he had alcoholic delusions and that fear of bodily harm and an impulse to escape an imaginary foe are characteristic of these delusions. There is evidence that the delusion may manifest itself, disappear and shortly recur. There is evidence that he was placed in a room with a guarded window.

We think the evidence recited presents a question for the jury as to whether the physician or the nurse should not, in the exercise of the requisite skill and care, have foreseen such a casualty and protected the decedent from the unguarded window in the bathroom. (*Hogan* v. *Hospital Co., supra; Wetzel* v. *Omaha Maternity & General Hospital Assn.,* 96 Neb. 636.)

The judgment must be reversed, however. The verdict is against both the corporate and the individual defendant. There was evidence upon which the jury might have found either liable, but no evidence upon which they could be held jointly. The physicians and the nurse were not the servants of both. The jury did not decide who was the master. The corporation operated the hospital or it did not. If it did, it could be liable; if it did not, and the individual defendant was the actual operator and master, why should there be a judgment against it?

The judgment and order should be reversed and a new trial granted, costs to abide the event.

JENKS, P. J., MILLS and RICH, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the event.