# SARAH L. DAVIS, now METCALF, Respondent, SPRINGFIELD HOSPITAL, Appellant.

## Springfield Court of Appeals, January 14, 1920.

1. **TRIAL: Credibility of Evidence a Question for Jury.** The evidence not being contradictory of the physical facts or inherently incredible, its credibility is for the jury.

2. **APPEAL AND ERROR: Defendant Not Prejudiced by Instruction Not in Harmony With its Theory.** Where plaintiff tried the case on the theory that deceased while delirious left his room in hospital, went into a hallway, opened a door leading to a fire escape, and fell down the steps to the ground, defendant hospital, which claimed that deceased met his death by throwing himself from the window of his room, was not injured by refusal of instruction that the evidence was insufficient to sustain the claim that deceased met his death by falling from, or throwing himself from, the window of his room.

3. **HOSPITALS: In Action for Injuries to Patient Due to Delirious Condition, Defendant's Knowledge Thereof Must be Alleged.** In action for the death of a patient on the third floor of defendant's hospital, who, while in a delirious condition and while attempting to escape from the hospital, fell to the ground and was killed, averment that defendant had previous knowledge of deceased's delirious condition, and inability to know of dangers and take care of himself was necessary to a good petition.

4. **PLEADING: Defects in Petition Were Cured by Verdict.** In action for death of a patient on the third floor of defendant's hospital, who, while in a delirious condition and while attempting to escape from the hospital, fell to the ground and was killed, petition *held* not so defective, as regards failure to allege that defendant had knowledge of deceased's delirious condition, as to be insufficient after verdict.

5. **APPEAL AND ERROR: Defective Petition for Death of Hospital Patient Held Not to Prejudice Defendant.** In action for death of a patient on the third floor of defendant's hospital, who, while in a delirious condition and while attempting to escape from the hospital, fell to the ground and was killed, that petition failed to specifically allege that defendant had knowledge of deceased's delirious condition, *held* not to have prejudiced defendant in view of evidence and instructions.

6. **HOSPITALS: Question of Negligence in Failing to |Watch Delirious Patient was for Jury.** In action for death of a patient on the third floor of defendant's hospital, who, while in a delirious condition and while attempting to escape from the hospital, fell to the ground and was killed, held that defendant's negligence was a question for the jury.

7. ————: **Must Use Reasonable Care to Safeguard Against Dangers Due to Mental Incapacity.** Defendant hospital was required to use reasonable care and diligence, not only in treating patients, but also in safeguarding them from dangers due to mental incapacity.

8. ————: **Degree of Care of Patients Required.** The degree of care and diligence required of a hospital in caring for a patient is measured both by the mental incapacity of the patient, and the danger which the surroundings indicate may befall him in view of any particular mental traits exhibited by the patient.

9. ————: **Not Required to Take Measures to Avert that Which is Unlikely to Happen.** While a private hospital owes to its patients such reasonable care and attention as their own mental or physical conditions reasonably require, this requirement is limited by the unbending rule that no one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen.

10. **DEATH: Widow's Re-marriage Does Not Bar Action Nor Reduce Recovery for Death of Husband.** The widow's re-marriage will not preclude her from maintaining action for the death of first husband, nor affect the amount of her recovery.

Appeal from Division One of Greene County Circuit Court.—*Hon. Guy D. Kirby,* Judge.

AFFIRMED.

*T. H. Douglas* and *Argus Cox* for respondent.

*Delaney & Delaney* for appellant.

STURGIS, P. J.—This is a suit by the widow of Nathan D. Davis, since remarried, for damages for the death of her former husband caused as alleged by defendant's negligence. This is the second appeal in this case. [See 196 S. W. 105.] After being remanded another trial was had resulting in a verdict and judgment for plaintiff and defendant again appeals.

The defendant maintains a hospital at Springfield, Missouri, for the care of the sick and injured, charging for such services, and the deceased was at the time of his death what is called a pay patient at such hospital. The defendant is not claimed to have been a charitable institution, but was conducted on the theory of charging and receiving adequate compensation for the services rendered. That it is liable for its negligent acts is not controverted.

The gist of the charge of negligence is that while deceased was a patient in such hospital and was so seriously sick and afflicted as to be delirious, mentally incapable of caring for himself and unconscious of dangers surrounding him, defendant negligently failed to watch and care for him, thereby permitting him to escape from his room and from the building and to fall violently to the ground inflicting injuries from which he died. The negligence consists in failing to give the patient the care and attention which his mental and physical condition demanded for his safety.

At the last trial, now on review, the plaintiff tried the case on the theory that deceased, being delirious and unconscious of his acts and danger, left his room on the third floor of the hospital between twelve and one o'clock at night in the absence of any nurse or attendant and went into the hallway, opened a door leading to a fire escape and fell down the steps of the fire escape to the ground, receiving injuries from which he died a few hours later. About all that was known for certain is that deceased was in bed in his room on the third floor till shortly before the nurse in charge of that floor, returning thereto after a short absence, discovered that he was missing. This was shortly after midnight and on a search being made deceased was found on the ground near the foot of the fire escape. The deceased's room was on the same side of the building and next to this fire escape to that the door leading from the hall to the fire escape was only a short distance from the window in deceased's room. It was first

thought, and so the first petition charged, that deceased fell or threw himself from the window in his room. There was some evidence at the first trial that deceased wandered from his room and through the door of this fire escape and fell therefrom while attemping to descend the steps leading from the landing to the ground. Following the ruling of the Supreme Court in Breese v. Railroad, 264 Mo. 258, 174 S. W. 509, we held on the first appeal that if deceased met his death in consequence of throwing himself out of the window of his room, which window was some two or three feet from the floor, then the nurse and those caring for deceased could not be held negligent for failing to anticipate and guard against the suicidal mania of deceased, there being nothing in deceased's previous conduct or mental disorders indicating suicidal mania.

At the last trial the evidence supporting deceased's escape from the hospital through the door of the fire escape and fell therefrom is much stronger than at the first trial. Indeed, while there were external evidences of deceased having received a fall, such evidences, no bones being broken or severe bruises being found, negative so severe a fall as would result from a third story window and corroborate the evidence of a witness, testifying for the first time after the first trial, that she, being in a room on the same floor, heard and saw deceased walking in the hall in his night clothes and after shutting her door to prevent his possible entrance there heard him opening the door of the fire escape followed by a bumping noise as if falling down the steps. This and other evidence supports the theory that deceased in the nures's absence, being delirious and unconscious of his acts, arose from his bed, went into the hall, walked down same a short distance, turned and walked back till he came to the door opening on the fire escape, opened that door and went onto the landing, fell down the steps to the next landing at the second floor and from there to the ground. This

is indicated also by his position when found. Defendant assails this later discovered evidence as unworthy of belief, but it is not contradictory of the physical facts nor inherently incredible. Its credibility was for the jury.

The instructions given clearly required the jury in order to find for plaintiff to find that deceased, Nathan D. Davis, while in defendant's care become delirious and mentally unable to properly care for himself and while in that condition escaped from the room and "wandered from the building onto the fire escape and fell from the fire escape to the ground." At defendant's request this instruction was given: "You are instructed that if on considering all the evidence you are not satisfied by a preponderence of the testimony as to how the death was caused, that is, whether by falling or throwing himself out of the window or attempting to use the fire escape, then the verdict must be for the defendant." Defendant claims that it was entitled to a plain, postive and affirmative instruction telling the jury that if they found that deceased met his death by falling from or throwing himself from the window of his room that plaintiff could not recover. [Stephens v. Eldorado Springs, 185 Mo. App. 464, 471, 171 S. W. 657.] Granting that defendant was so entitled we find it most unfortunate in not asking such a plain and postive declaration. The instruction, of the refusal of which defendant complains, reads: "The court declares the law to be that under the law there is not sufficient evidence to sustain the claim that deceased met his death by falling from or throwing himself from the window of his room." Now, it was defendant who was claiming that deceased "threw himself from the window," thereby committing an act for which defendant was not liable and if there was not "sufficient evidence to sustain the claim" then plaintiff's theory of his escape through the door to the fire escape and fall therefrom was the only theory left. Certainly defendant was not injured by the refusal of this instruction.

It is claimed that plaintiff's petition is fatally defective is not alleging that defendant had previous knowledge of the deceased's delirious condition and inability to know of dangers and take care of himself. Of course defendant cannot be held liable for not guarding against that which it did not know was likely to happen. Averment of such knowledge was therefore necessary to a good petition. [Rogers v. Ins. Co., 186 M. 248, 255, 85 S. W. 369; Holwerson v. Railroad, 157 Mo. 216, 243, 57 S. W. 770.] It is sufficient, however, if facts constituting or reasonable implying such knowledge are averred. In this case it was alleged in substance that deceased was sick and afficted when he entered the hospital, February 1, 1916; that he remained there till February 4, 1916, under defendant's care; that while under defendant's care and while so seriously afflicted as to be unable to care for himself or to know what he was doing or to be conscious of dangers and to protect himself therefrom defendant neglected to give deceased the care and attention his condition required and failed to properly watch and care for him while in a delirious condition in consequence of which deceased escaped from such building and fell to the ground. These facts clearly imply that defendant's condition of mind existed for such lenght of time while in its care and under its observation as to charge defendant with knowledge actual or constructive. The petition is not so fatally defective as to be insufficient after verdict.

We are also confident that defendant was in no wise misled or predjudiced in this particular. Under the instructions given the jury was required to find that while the deceased was in the defendant's care his condition was such that he was likely to become delirious and unable to care for himself and that the servants of defendant *knew these facts;* and further that deceased did become delirious and unable to care for himself and while in that condition did escape from his room and the building and fell from the fire

escape and that defendant's servants *knew at that time* that he was likely to become delirious and unable to care for himself and to go into danger and with such knowledge failed to use ordinary care to watch him and prevent his doing so. The evidence shows that deceased was delirious at the time he entered the hosuital and continued so at least at intervals until he met with this accident. He was found wandering in the halls, on several occasions and taken beck to his room by the hospital attendants. He had been a stock dealer and in his delirium imagined he was driving stock. As to his condition on the night of the accident the head nurse testified: "When I went to his room at 9 o'clock he was out of bed, his light was turned out, and he was up, at the dresser. I think he was trying to turn on the light. I went in and turned on the light. I put him back in bed and left the light burning. . . . He did not seem himself. I saw him have the bedding off clear down to the mattress; he had the linen strung all over the room; said he was making a wagon cover. I put him back to bed and tucked the blankets up around the bed and told him he must stay in bed, he would take cold he had been up so much, and he said he was supposed to be up;' he says, 'You needn't bother about me.' I stayed in there several minutes after that, five or ten minutes, and then I left him. I found him in the hall after that and put him back to bed again. Found him on the floor some time after one o'clock. . . . It was before midnight he was making a wagon sheet and after midnight when we found him in the hall and about one o'clock or after one when we found him on the ground."

The question of most difficulty is as to whether the evidence justifies a submission to the jury of the issue of negligence or want of reasonable care in not watching or caring for the patient more closely to prevent his injuring himself in view of his mental condition. That is the sole charge of negligence in the

petition and the crucial point in plaintiff's instruction is "that defendant failed to use ordinary care to watch him and prevent" his going into danger and being injured by reason of his mental helpessness.    There is no question as to the law being that defendant was required to use reasonable care and diligence not only in treating this patient for his illness but also in safeguarding him from the danger due to his mental incapacity to care for himself.  The degree or care and diligence required is measured both by the mental incapacity of the patient and the danger which the surroundings indicate may befall such patient in view of any peculiar mental traits exhibited by the patient. While all the authorities hold that a private hospital owes to its patients such reasonable care and attention for their safety as their known mental and physical condidion reasonably require. yet this is always limited by the unbending rule that no one is required to guard against or take measures to avert that which under the circumstances is not likely to happen, or more accurately, which a reasonable person under the circumstances would not anticipate as likely to happen.  The law only requires reasonable care—that care to avert dangers which  a reasonable man would take under the circumstances as they exist—and no man does or is required to take measures to avert a danger which circumstances as known to him do not suggest as reasonably likely to happen.  These circumstances include the patient's mental condition and abberrations and what he is likely to do by reason thereof,  the degree of his mental and physical helpessness and the dangers which his surroundings afford.

Under these rules our Supreme Court held in Breeze v. Railroad, 264 Mo. 258, 174 S. W. 409, that hospital attendants were not required to anticipate that a patient who was delirious and possessed of delusions, but showing no tendency to self destruction, would throw himself out of a high window and was not required to guard against such action.  The same

court in Phillips v. Railroad, 211 Mo. 419, 111 S. W. 109, held that the attendants of a mentally helpless patient should anticipate that such patient if allowed to go unattended on the streets of a city would likely wander onto a street car track and receive injury and should guard against such danger.

In Robertson v. Towns Hospital, 165 N. Y. Supp. 17, that court held that it was reasonable to anticipate that a patient suffering mental derangement from alcoholism would throw himself out of an open window when he had exhibited the delusion that someone was trying to kill him from whom he was trying to escape. So also the court in University of Louisville v. Hammock, 106 S. W. 219, held that a patient similarly afflicted, the nature of his ailment being known to the attending physician, might reasonably be expected to become violent and dangerous at any time and consequently that his liability to injure another patient should be guarded against. In Hogan v. Clarksburg Hospital Co. (W. Va.), 59 S. E. 943, a patient was injured by his wandering to an open fire and catching his clothes on fire and the court said: "It is bound to exercise that degree of care towards its patients placed therein measured by the capacity of such patients to look after and provide for their own safety. It is the duty of such hospital to employ only competent physicians and nurses, and to treat such patients with such skill and care as ordinarily obtains in the conduct of such institutions, and to protect its patients in such manner as their condition may render necessary, and such degree of care and diligence should be in proportion, to the physical and mental ailments (of) the patient rendering him unable to look after his own safety." In Torrey v. Riverside Sanitarium, 157 N. W. 552, the court said that it could not reasonably be anticipated that a mentally deranged patient, possessing delusions as to his heart and stomach but tractable and showing no symptoms of violence, would suddenly break away from the attendant and injure a third party.

In Harris v. Woman's Hospital, 14 N. Y. Supp. 881, a woman patient in a fit of temporary, insanity threw herself from a window. She had shown some symptoms of mental derangement and in denying liability the court said: "If the attempt to get out of bed was indicative of mental disturbance, the fact that the patient listened to the nurse's argument, and complied with her remonstrance, showed that she was amenable to reason. But, if there were any want of care in not placing a special watch on deceased all that night to see that she did not leave her bed, the consequences of neglecting to do so were too remote to fasten legal responsibility upon the house surgeon or the hospital authorities. An injury to her health due to interference with the success of her operation by her incautious movements is the utmost that could be apprehended. Her death in the manner detailed was not to be expected." In Wetsel v. Omaha Maternity Ass'n (Neb.), 148 N. W. 582, Anno. Cas. 1915 B, 1224, liability where a delirious patient fell out of an open window was upheld on the ground that the patient's condition and previous conduct was such that a tendency of self injury might well have been forseen and should have been guarded against.

With some hesitation we come to the conslusion that there are sufficient facts here to carry to the jury the question that defendant could and should have anticipated that deceased was likely to receive injuries unless more closely watched and guarded. There is no question but that his mental condition and conduct were such as to reasonably warn the hospital attendants that unless watched he was likely at any time to leave his bed and wander through the halls and open doors. The evidence is that this door to the fire escape was closed and perhaps locked but with the key left in the door. Deceased had also shown a tendency to want to leave the building to get morphine or cocaine. He would naturally come to this door in wandering through the hall and finding the key therein open it to

the fire escape, or he might have fallen down the inside stairs.    We think the defendant's negligence was a jury question and having been properly sumbitted in binding on this court.

The defendant has raised the point that the widow having remarried at the time of the last trial connot maintain this suit or at least that her damages should be limited to the period of her widowhood. No case from this state is cited on this proposition.    The rule is stated in 13 Cyc. 365, that in an action by the widow for the death of her husband, her subsequent marriage is not to be considered in mitigation of damages.    In 5 Southerland on Damages (4 Ed.), 4884, speaking of the recovery by the widow for her husband's death, it is said that the widow's remarriage will not preclude her from maintaining the action nor affect the amount of her recovery.    We adopt this rule with all its rigor but with a consciousness that juries in the exercise of their equity powers do in practice correct many matters in which law by reason of its universality is deficient.

Other errors are complained of which we find without merit. If we are right in holding that plaintiff made a case for the jury, then we are confident that a fair and proper trial was had.

Having so ruled the judgment is affirmed.  *Farrington* and *Bradley, JJ.,* concur.