26746. TATE *v.* McCALL HOSPITAL.

DECIDED APRIL 22, 1938.

*Maddox & Griffin,* for plaintiff.

*Maddox, Matthews & Owens, Bryan, Middlebrooks & Carter, John A. Dunaway,* for defendant.

SUTTON, J. The general rule as to the duty owed by a private hospital to a patient is well stated in *Emory University* v. *Shadburn,* 47 *Ga. App.* 643 (171 S. E. 192), and *Stansfield* v. *Gardner,* 56 *Ga. App.* 634 (193 S. E. 375), as follows: "A private hospital in which patients are placed for treatment by their physicians, and which undertakes to care for the patients and supervise and look after them, is under the duty to exercise such reasonable care in looking after and protecting a patient as the patient's condition, which is known to the hospital through its agents and servants charged with the duty of looking after and supervising the patient, may require. This duty extends to safeguarding and protecting the patient from any known or reasonably apprehended danger from himself which may be due to his mental incapacity, and to use ordinary and reasonable care to prevent it." The plaintiff in the present case made no arrangements for treatment at the hospital of the defendant. He was not consulted in that respect, but while obviously unable to exercise any judgment was placed in the hospital under an agreement with the wife to pay the expenses. As between the husband and the wife she was a benevolent volunteer, and not his agent, in attempting to supplement whatever duty rested on the hospital. This necessarily follows from the fact that he neither authorized her to assume that role nor ever ratified her action. It appears that the hospital did not expressly designate her as his caretaker for the night when he was injured, but, on being informed that his condition required the presence of some one throughout the night, she volunteered, as became a good and faithful wife, to undertake that supervision. But though the spirit

was willing the flesh was weak, because she was one who not only toiled in a hosiery mill by day but for several nights, before the husband was placed in the hospital, had been forced, in addition to caring for two small children, to minister to him during his illness and delirium. Fearing that she might fall asleep in her attempted vigil, and that the husband might thus elude her, she adopted the simple expedient of holding his hand, in the hope that, should he attempt to leave the bed, the withdrawal of his hand would awaken her. Nature overrode her plans, her tired spirits yielded to the stern necessities of sleep, the patient eluded her, jumped from a window and was injured.

So far as the hospital's duty to the patient is concerned, the acceptance by it of the services undertaken by the wife can not be said, as a matter of law, to have discharged that obligation. Whether or not the hospital, with the wife present in the ward where the husband was a patient, should, in the exercise of ordinary care, have reasonably apprehended that the patient, in his condition known to the hospital authorities, might have harmed himself, presents a question for determination of the jury. The record does not show that the wife informed the hospital that she was in need of sleep, but it does disclose that the defendant knew that she worked in a hosiery mill by day, and that her husband had been sick for about a week before he was admitted to the hospital, and seriously ill for several days, being "out of his head," and that her inability to properly care for him and two small children had forced her to place him in the hospital. The defendant knew, as shown by the chart which it kept, and which was admitted in evidence, that the patient was "mentally off," and that without adequate supervision he might, as he had done before the wife volunteered her services for the night, escape from his bed, and might harm himself. Should a reasonable consideration of these facts have caused the hospital, in the exercise of ordinary care and diligence, to apprehend that such a person as the wife might not, in her condition, however solicitous she might have been for the husband's welfare, be able to properly protect him and that, in his known condition, he might come to harm? We think that a jury question was presented, and that the nonsuit should not have been granted.

Counsel for the defendant in error contend that under the *Stans-*

*field* case, supra, the hospital was not under a duty to have a special attendant present at the time of the patient's escape and injury. In support of their argument they quote the following: "Although in the present case the defendant was originally under a duty to provide a special attendant, *as provided by contract with the father of the plaintiff,* for the patient while being treated and cared for in the hospital of the defendant, it was shown by competent evidence that at the time of the injury to the plaintiff the defendant was under no *special* duty to have an attendant with the plaintiff constantly," etc. (Italics ours.) That was a case in which the father contracted, on behalf of the patient, for services independent of what would be required generally where a hospital accepts one for treatment and care. But the hospital was not, merely because of such special contract, relieved of any duty which, according to the condition of the patient known to the hospital authorities, rested on it. The father had first arranged for a special attendant at all times, but later agreed for the hospital to be relieved, *under the special contract,* from providing an attendant within the hospital. The duty of a hospital towards one for whom it undertakes to care can not, by agreement with a third person, be reduced below that which the law generally exacts. As was said in the *Stansfield* case, on page 644, "Apart from any special contract, however, it was for the jury to determine whether or not, under the general rule, the condition of the patient, known to the defendant, required that an attendant should have been with the patient at the instant of the fall." Whether or not the hospital in the present case, in accepting the services of the wife of the patient, used ordinary and reasonable care to safeguard and protect the patient from any known or reasonably apprehended danger from himself which might be due to his condition, or otherwise used the care required by the law for the protection of the patient, should have been submitted to the jury for determination.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*