**LEXINGTON HOSPITAL, Inc. v. WHITE.**

Court of Appeals of Kentucky.

Feb. 1, 1952.

Harbison, Kessinger, Lisle & Bush, Lexington, for appellant.

J. Marshall McCann, Lexington, Zeb A. Stewart, Frankfort, for appellee.

STANLEY, Commissioner.

The appellant, Lexington Hospital, a corporation, operates a private sanatorium called Wayside Hospital for the special treatment of patients suffering mental or nervous illness. The appellee, David S. White, recovered judgment against it for $6,963.57, of which $5,000 is for personal injuries and $1,963.57 for medical expenses, etc. The action is based on negligence in failing to guard and protect the plaintiff when he was mentally incapable of caring for himself. In delirium, and unable to realize the consequences, he broke through a window and jumped from a second story and suffered severe injuries.

The appellant contends it was entitled to a directed verdict on two grounds. One is that it was not negligent and the other that its attendants and nurses had dutifully and literally carried out the instructions of the patient's physicians regarding his place in the hospital and their surveillance.

The plaintiff had been afflicted with periodical epileptic attacks which had been growing more frequent and severe. His local physician at Corbin communicated with Dr. H. Halbert Leet, the president of the defendant corporation and in charge of the hospital, and he advised that the patient be brought there. He was received in the early evening of Thursday, May 12, 1949, by Edward L. Houchins, an attendant having the title of a psychiatric aide, and placed in a "closed ward" on the second floor. His wife signed an elaborate contract with the hospital which recites that the patient was "in need of restraint and treatment." It contains many provisions of immunity from liability, upon which, however, the defendant does not rely.

The plaintiff's affliction was characterized by anxiety symptoms before the seizure and paranoid delusions immediately following. When so suffering, he imagined he was in a German prison with spies all around him, and without warning would run off and hide. The day before he was taken to the hospital he had such an attack and fled from his home over a back fence to a neighbor's house, where he was found two hours later hiding on the back porch. When he was being entered in the hospital, the patient's wife and brother very clearly and specifically told Houchins his condition and the effect of the epileptic attacks. He was warned that Mr. White should be closely watched. Houchins admitted that this was told to him "over and over" and that he assured Mrs. White that the hospital would take care of her husband and would do everything possible they could for him. While his wife was talking to Houchins she asked if he could get out of a window, and he replied that he could not for the windows were barred. Later, during the evening, Dr. Carl Weisel of the hospital staff made a tentative diagnosis of the patient, including his physical and mental condition, hallucinations and proclivities. The plaintiff's brother testified that he told Dr. Weisel that he should be watched and guarded closely because "he would take off, start running without a minute's notice" and they were afraid he would hurt himself. A notation was made on the hospital chart that he should be watched for epileptic fits. On a hospital form styled, "Initial Standing Orders," appears an entry, "Special observation for suicide or escape."

On Sunday following White's admittance to the hospital he escaped and upon reaching Richmond, called his wife. She called Dr. Leet, and though he advised that White be allowed to return to his home and brought back the next day, Mrs. White and his brother brought him back to the Wayside Hospital that night. The next day, May 16, one attendant left White in the ward on the second floor and went to another room to assist a patient, and another attendant went downstairs to the office or to look after a patient. White was left unattended and unwatched. He went into a bathroom, smashed out the top sash, and in attempting to escape, fell to the brick sidewalk two stories below. The lower part of the window was covered with a grill or metal bars, as were other windows on the floor.

The plaintiff testified that he had realized his condition but had no recollection whatever of having been brought to the Wayside Hospital or of anything that happened there. He came to realization or consciousness several days afterward in St. Joseph's Hospital in Lexington where he had been taken for treatment of his injuries.

We need not elaborate upon the defendant's evidence, for we are considering only the question of the sufficiency of the plaintiff's proof to take the case to the jury. The evidence, consisting of certain facts and professional views, is to the effect that the patient had been reasonably protected; that the barring of the lower part of the windows and the surveillance given were sufficient measures to avert what reasonable persons under the circumstances might anticipate, and that the patient's action and conduct resulting in his injuries could not have been reasonably foreseen. It was shown that just before the accident White was sitting on a divan in the dayroom reading a newspaper and seemed to be all right.

It is not questioned that a private hospital, not conducted as a charitable institution, receives patients under an implied obligation to exercise ordinary care and attention for their safety, and that such degree of care and protection should be in proportion to the physical and mental ailments of the particular patient, known or discoverable by the exercise of reasonable skill and diligence. The hospital or its proprietor must respond in damages to a patient injured through the failure of its nurses and attendants to observe that duty either through an act of omission or of commission. University of Louisville v. Hammock, 127 Ky. 564, 106 S.W. 219, 14 L.R.A.,N.S., 784, 128 Am.St.Rep. 355; Kirby v. Berea College, 196 Ky. 353, 244 S.W. 775; Hignite's Administratrix v. Louisville Neuropathic Sanitorium, 223 Ky.

497, 4 S.W.2d 407; Hicks' Administratrix v. Harlan Hospital, 231 Ky. 60, 21 S.W.2d 125; 26 Am.Jur., Hospitals and Asylums, Sec. 14; 41 C.J.S., Hospitals, § 8(3).

█ In the case of a delirious or deranged patient or one likely to become such, the hospital's reasonable care and attention extends to safeguarding him from danger due to his mental incapacity to care for himself. This comprehends any danger which the surroundings would indicate to physicians and nurses of prudence, competency and experience ordinarily possessed by persons similarly engaged, might befall such patient in view of any peculiar trait exhibited by him or which his mental condition or aberration would suggest as likely to happen. Davis v. Springfield Hospital, 204 Mo.App. 626, 218 S.W. 696; Robertson v. Charles B. Towns Hospital, 178 App.Div. 285, 165 N.Y.S. 17.

█ Jumping or falling from an upper story of the building is a danger which may be apprehended. A number of cases where patients jumped or fell out of windows or were let escape from the hospital are noted in 22 A.L.R. 347; 39 A.L.R. 1433, 1435; 124 A.L.R. 195. Two of these notes are of such pertinence to the instant case that we quote them.

"Where one suffering from alcoholism and its attendant illusions of fear of bodily harm and a desire to escape imaginary foes was taken to a hospital for treatment, and assigned to a room on the third floor, in which there was only one window, which was guarded with a metallic grating, but was killed by falling from an unguarded window in a lavatory which he had been accustomed to use, this window being covered with glass which the patient broke, it was held that, although there was no evidence that conscious suicide should have been foreseen, it was for the jury to say whether the physician or the nurse in charge should not, in the exercise of requisite skill and care, have foreseen such a casuality and protected the patient. Robertson v. Charles B. Towns Hospital (N.Y.) supra."

"And where the patient was brought to a private hospital 'mentally off' and his wife volunteered to stay with him for the night when informed by the nurse that he was in no condition to be left by himself, although no arrangement was made for a special nurse, and it appeared that he had attempted to climb out of the window but was put back to bed by the nurse, and that while the nurse was absent and the wife asleep from exhaustion, the patient left the bed and jumped from a second-story window, injuring himself, it was held in Tate v. McCall Hospital (1938) 57 Ga.App. 824, 196 S.E. 906, that the facts presented a case for the jury to determine as to whether or not the hospital used ordinary and reasonable care to prevent the patient from harming himself, and it was error in the trial court to grant a nonsuit."

█ Counsel for the appellant contend that the appellee's act was so unusual and extraordinary that it was altogether unforeseeable, hence, negligence in not foreseeing and guarding against such an act cannot be charged against the hospital. Foreseeableness or predictability of casualty is not the sole measure of duty. Accidents almost invariably are surprises in the sense that the precise manner of their occurrence cannot be foreseen. It is but a test of negligence, namely, whether the defendant's conduct created an unreasonable risk of harm to the plaintiff. If it did, the defendant is liable for all the injuries within the reasonable range of such risk whether they could have been foreseen or not. Spivey v. St. Thomas Hospital, 31 Tenn.App. 12, 211 S.W.2d 450. The Restatement of the Law of Torts, Sec. 435, Supplement, states the law to be:

"(1) If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.

"(2) The actor's conduct is not a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.

"Comment *a*. The fact that the actor, at the time of his negligent conduct, neither realized nor should have realized that it might cause harm to another in the manner in which it occurred, is not of itself sufficient to prevent him from being liable for the other's harm if his conduct was negligent towards that other and was in all other particulars a substantial factor in bringing about the harm. However, the manner in which the harm occurs may involve the co-operation of other assisting factors so many and important that the actor's negligence cannot be regarded as a substantial factor in bringing about the harm (see Sec. 433, Clause *(a)*). Negligent conduct may result in unexpectable harm to another, (1) because the actor neither knows nor should know of the situation upon which his negligence operates, (2) because a second force the operation of which he had no reason to anticipate is an assisting cause in bringing about the harm."

It seems to us that the situation here is brought within the rule of Sec. 1 of the Restatement and the first sentence of Comment *a*.

We think McPartland v. State, 277 App. Div. 103, 98 N.Y.S.2d 665, which the appellant cites in support of its position of nonliability, is distinguishable. A patient, who had been suffering from epileptic seizures, had reached such a stage of recovery that the hospital authorities were considering his discharge. He had the privilege of walking unattended on the hospital grounds. Perhaps while turning on water into a tub for watering cattle in a field beyond a fence, he had an attack of epilepsy and pitched forward into the tub and was drowned. The hospital was held not liable because the act could not have been anticipated by reasonably prudent hospital management. Under the circumstances, the patient's irrational act was not within the range of reasonable foreseeability. In the instant case, the patient had been admitted to the defendant's hospital only a few days before and had not reached such a stage of recovery.

In the present case the defendant had recognized in its written contract the need of restraint of the patient. It had been expressly advised of his sudden and intermittent fits of aberration and of his trait to flee in his delirium. It had let the patient get away a few days before, so received added warning from its own experience. This emphasized the need of special care and protection to prevent a recurrence. Despite all this, the patient had been left alone without surveillance long enough to enter another room, break out the window and fall to the ground.

Precedents of influence other than those cited are Croupp v. Garfield Park Sanitarium, 147 Ill.App. 7; Wetzel v. Omaha Maternity and General Hospital Association, 96 Neb. 636, 148 N.W. 582; Spivey v. St. Thomas Hospital, 31 Tenn.App. 12 211 S.W.2d 450. And of special pertinence is Bennett v. Punton Sanitarium Association, 213 Mo.App. 363, 249 S.W. 666, where an insane patient who was left unguarded, in an attempt to escape, broke through heavy wire screening and jumped or fell from a fourth story window. See Note, 22 A.L.R. 1435.

Little need be said about the claim of nonliability because the appellant's attendants had followed the doctors' orders. The appellee's doctors were Leet, president of the corporation, and Weisel, another staff physician, who had the patient placed under the care of the nurses and attendants. The action for damages rests upon their omission of diligence and their failure to safeguard the patient adequately. The cases of Stacy v. Williams, 253 Ky. 353, 69 S.W.2d 697, and Carter v. Harlan Hospital, 278 Ky. 84, 128 S.W.2d 174, are relied upon. In them we held there was no liability on the part of the hospitals because the negligence was that of the attending surgeons. Each was a case of malpractice. In neither were there allegations or evidence of breach of any undertaking or duty on the part of the hospital. The fact that the doctors were principal stockholders in the corporations was irrelevant. In the present case, as stated, the patient had been turned over to the hospital for its care and attention. The question was one of negligence of its employees and not of vicarious responsi-

bility. The defendant could not evade responsibility for the negligence of its employees merely because more specific instructions were not given by the doctors.

■ The appellant contends that it was error to refuse certain offered instructions. One is that it was not required to anticipate the act of the plaintiff unless there was some previous conduct or demeanor on his part which was known or could have been known by the defendant's employees in the exercise of ordinary care to cause them, in the exercise of such care, to anticipate the plaintiff's act. It seems to us that this defense was embraced in the instructions given. The one upon which liability is predicated is in substance, if the jury believed the employees were informed or had discovered, or in the exercise of reasonable skill and care should have discovered, that the plaintiff's condition was such "that he might reasonably be expected" to attempt to escape and might thereby be injured, then it was the defendant's duty "to use that degree of care to have him watched or kept under observation to prevent him from jumping or escaping and injuring himself, which ordinarily skillful, careful, prudent persons engaged in caring for and treating persons in his condition would have used," and if, under those circumstances, the employees had failed to observe those duties and their failure was the proximate cause of plaintiff's injury, the law is for the plaintiff.

The court gave five converse instructions submitting the defenses. One is to the effect that the hospital attendants were not required to guard against or take measures to avert any action of the patient which reasonably prudent persons under the circumstances would not anticipate as likely to happen, and if the jury believed that they knew or had reasonable grounds for believing the plaintiff would attempt to escape through the upper sash of the window and after such knowledge or opportunity to acquire it, they failed to exert such reasonable supervision over the plaintiff and by reason thereof he was injured, they should find for the defendant. The same defense is substantially embodied in

another instruction, which may well be regarded as a duplication. Another is a general instruction on the failure of the employees to exercise ordinary care. Another authorized a verdict for the defendant if the jury believed the plaintiff had sufficient mind to know or realize the danger of his attempting to escape. Another submitted the defense of contributory negligence. It will be seen, therefore, that the terms of the refused instructions were fully embraced in the given instructions.

Two other instructions offered by the defendant and not given submitted its exoneration from liability if its attendants had followed or carried out the directions of the plaintiff's physicians even though the prescribed restraint and treatment were insufficient and erroneous. The instructions were properly refused for the reasons given above for holding the defendant was not entitled to a peremptory instruction on this ground.

The judgment is affirmed.