Vincent **SNEIDER** and Sandra Ann Sneider

v.

**HYATT CORPORATION, d/b/a Hyatt Regency House Atlanta.**

Civ. A. No. 74–398.

United States District Court, N. D. Georgia, Atlanta Division.

Jan. 16, 1975.

Foy R. Devine, Thomas J. Hughes, Jr., Philip F. Etheridge, Atlanta, Ga., for plaintiffs.

David A. Handley, Jack O. Morse, Atlanta, Ga., for defendant.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is a diversity action to recover for the wrongful death of a woman resulting from her fall from the twenty-first floor of the Hyatt Regency Atlanta hotel. Plaintiffs are the husband and daughter of the decedent. The action is presently before the court on defendant's motion for summary judgment, which is founded on two undisputed facts, *see* Local Court R. 91.72: (1) at 10:24 P.M. on February 6, 1974, decedent, Mrs. Violet Sneider, registered as a guest at defendant's Atlanta hotel; and (2) at approximately 12:00 noon on February 7, 1974, Mrs. Sneider took her own life by committing suicide when she jumped from the twenty-first floor to her death in the lobby of defendant's Atlanta hotel.

In support of this motion, defendant contends in essence, that under no circumstances may a hotel be held liable for the suicide of one of its guests. Thus, the instant motion presents only questions of law, and in light of the fact that the two undisputed facts relied on by defendant appear on the face of the complaint, this motion may have more appropriately been filed as a motion to dismiss. In opposition to the instant motion plaintiffs have complied with the mandates of Rule 56(e), Fed.R.Civ.P., by setting forth several disputed and undisputed facts. Viewed in the light most favorable to plaintiffs, *see, e. g.,* Croley v. Matson Navigation Co., 434 F.2d 73, 75 (5th Cir. 1970), these facts reveal several potentially triable issues. However, it is not necessary to deny the motion on this ground; for in light of the applicable law, it is clear that defendant has not carried its burden of showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c).

Defendant would have this court adopt an absolute rule that under no circumstances may a hotel be held liable for the suicide of one of its guests. In support of its argument, defendant relies on several legal principles which are incompletely stated, not strictly relevant to the circumstances in this case, and actually support the proposition that there may be circumstances in which a hotel may be held liable for a suicide. The most directly relevant concept cited by defendant is derived from those cases in which liability for suicide is predicated on a positive and affirmative negligent act. *See generally* Annot., 11 A.L.R.2d 751 (civil liability for death by suicide). Defendant quotes a portion of one of these cases, Appling v. Jones, 115 Ga. App. 301, 154 S.E.2d 406 (1967), as standing for the proposition that suicide is an *"independent intervening force* which would prevent any alleged negligent act by defendant from being a proximate cause of Mrs. Sneider's death." (emphasis by defendant). Insofar as this contention rests on the ruling in the *Appling* case, it is incorrect. In the first instance, the *Appling* case concerned an automobile accident injury and the question of whether or not decedent's suicide shortly thereafter should be deemed to be the direct and proximate cause of the defendant's negligence in operating his automobile. The Georgia Court quoted the general rule that "where injuries resulting from the negligence of a third person produce a state of mind in the injured person which leads to his suicide, the person guilty of

**978**

the negligence is not civilly responsible for the suicide," *id.* at 303, 154 S.E.2d at 409; but also added the following caveat:

"However, where the wrongful act produces such a rage or frenzy that the injured person destroys himself during such rage or frenzy, or in response to an uncontrollable impulse, the act is considered as within and a part of the line of causation from defendant's negligent injury to the death, and the defendant's act is the proximate cause of death." 11 A.L.R. 2d 751, 758 §§ 4, 5.

*Id.* Under the facts of that case, the *Appling* Court concluded that plaintiff therein failed to show that decedent's injury caused such a rage or frenzy that his suicide should be deemed to be proximately caused by the defendant's negligent act. *See also* Elliot v. Stone Baking Co., 49 Ga.App. 515, 176 S.E. 112 (1934).

The instant case does not involve essential questions of proximate cause, for plaintiffs do not contend that decedent's suicide resulted either directly or indirectly from an affirmative negligent act by defendant or its employees. On the contrary, plaintiffs contend that liability should be predicated in part on defendant's failure to take any affirmative action to prevent the suicide. Plaintiffs contend that defendant was on notice that the upper floors of its hotel have become an attractive location for suicides, in light of the prior history of suicide and attempted suicide in the hotel. Furthermore, plaintiffs cite several facts, many of which are in dispute, including decedent's inebriated condition when she arrived at the hotel, her lack of luggage, alleged telephone inquiries regarding decedent's whereabouts, and the alleged failure of defendants' employees to take any preventive action when they observed Mrs. Sneider wandering in a confused condition on the twenty-first floor, arguing that these factors support the contention that defendant should have foreseen the attendant risk of suicide and taken some preventive action. Thus, plaintiffs seek to bring this case within the holdings of the hospital cases, which impose liability for a patient's suicide when that suicide is deemed to be the proximate result of a breach of the hospital's duty of care. This duty has been defined as follows:

A private hospital . . . is under the duty to exercise such reasonable care in looking after and protecting a patient as the patient's condition, which is known to the hospital through its agents and servants charged with the duty of looking after and supervising the patient, may require. This duty extends to safeguarding and protecting the patient from any known or reasonably apprehended danger from himself which may be due to his mental incapacity, and to use ordinary and reasonable care to prevent it.

Tate v. McCall Hospital, 57 Ga.App. 824, 827, 196 S.E. 906 (1938). In such cases, the essential question is one of foreseeability, i. e., "whether or not the hospital authorities under the circumstances could reasonably have anticipated that the patient might harm himself." Annot., 11 A.L.R.2d 751 § 17 at 782. *See generally,* Stansfield v. Gardner, 56 Ga.App. 634, 193 S.E. 375 (1937); Brawner v. Russell, 50 Ga.App. 840, 179 S.E. 228 (1935). Emory University v. Shadburn, 47 Ga.App. 643, 171 S.E. 192 (1933). These questions are generally left to the trier of fact, and may not be resolved as a matter of law. Hospital Authority of Marietta v. Misfeldt, 99 Ga.App. 702, 109 S.E.2d 816 (1959).

In the instant case, if defendant's standard of care with respect to its guests were identical to the standard of care of a hospital, this court would not hesitate to rule that the circumstances of this case present triable issues of fact. However, plaintiffs have not cited, and this court has not found any Georgia cases which apply such a standard in cases involving hotels or similar facilities. It is unlikely that

a hotel should be held to the same standard as a hospital, for this latter standard is based on the hospital's express undertaking "to care for . . . patients and supervise and look after them . . . ." Tate v. McCall Hospital, *supra*, 57 Ga.App. at 827, 196 S.E. at 908. Conversely, it is unlikely that a hotel should be under no duty to protect and care for its troubled guests; this is the standard defendant in effect seeks to apply. Defendant contends that the appropriate standard in this context is set forth in the rescue cases: "One who does not cause another's peril is under no legal duty to rescue such other person: '[t]he only duty arising under such circumstances is one of humanity, and for a breach thereof the law does not, so far as we are informed impose any liability.' Allen v. Hixson, 111 Ga. 460, 464, 36 S.E. 810 (1900); Ficken v. Southern Cotton Oil Co., 40 Ga.App. 841, 151 S.E. 688 (1929); Devane v. Atlanta & Railroad Co., 4 Ga.App. 136, 60 S.E. 1079 (1908)." This is a correct legal principle; however, it is once again a legal principle which presupposes the absence of any legal duty of care imposed upon the hotel. When such a duty does exist, public policy may require that the person charged with the duty take affirmative action to alleviate the peril. Certainly, liability may be imposed when the affirmative, negligent acts of one party materially increase the danger to the party in peril. The legal principles applicable in such circumstances have been stated as follows:

> We recognize the general rule . . that in many circumstances a person has no legal duty to assist another human being who is in danger. However, *when some special relation exists*

between the parties, social policy may justify the imposition of a duty to assist or rescue one in peril. Prosser on Torts 2d ed. 184 § 38 . . . .

It is also recognized that if the defendant's own negligence has been responsible for the plaintiff's situation, a relation has arisen which imposes a duty to make a reasonable effort to give assistance, and avoid any further harm. [citations omitted].

The most common test of negligence is whether the consequences of the alleged wrongful act are [foreseeable] . . . . [citations omitted]. The question for the jury is whether danger should have been recognized by common experience, or by the special experience of the alleged wrongdoer, or by a person of ordinary prudence and foresight. [citations omitted].

Thomas v. Williams, 105 Ga.App. 321, 326–27, 124 S.E.2d 409, 413 (1962) (emphasis added). In this case, a woman brought suit for the alleged wrongful death of her husband resulting from a fire in his jail cell. Liability was predicated on failure to take adequate precautions to prevent the fire, on negligence in interfering with attempted rescue efforts, and on deliberate interference with rescue efforts. The Court also noted that " '[a] person is charged with knowledge that a man staggering drunk is incapable of exercising ordinary care for his own safety, and he is bound to deal with him with that fact in mind.' Bennett Drug Stores v. Mosely, 67 Ga.App. 347, 349, 20 S.E.2d 208 [drug store may be held liable for selling poison to a person in an inebriated state]." *Id.* 105 Ga.App. at 329, 124 S.E.2d at 414.[1]

---

1. To the extent that defendant might be charged with a higher standard of care in light of Mrs. Sneider's drunkenness when she checked in, it is possible to argue that this standard was fulfilled when defendant provided Mrs. Sneider with a second floor room, allegedly in order to keep her under surveillance. Defendant does not admit any motive in assigning decedent a room on a lower floor, and wisely refrains from arguing that the room assignment fulfilled its duty of care; for, in such circumstances, plaintiffs might argue that allowing Mrs. Sneider to wander on the twenty-first floor in an inebriated state constituted a negligent performance of an assumed "undertaking" to render special care.

Of course, the *Thomas* case was based in part on a jailor's duty to exercise "ordinary diligence to keep his prisoners safe and free from harm," *id.* at 327, 124 S.E.2d at 413; therefore it is analogous to the hospital cases in that respect. Similarly, without deciding what those circumstances may be, there may be instances when the innkeeper-guest relationship should be deemed to give rise to a special duty of care. In any event, the *Thomas* case indicates that defendant's argument, founded on the rescue cases, that it was under no duty of care to prevent the suicide, must be rejected. Furthermore the *Thomas* case supports plaintiffs' argument, based upon several telephone calls allegedly informing defendants' employees of Mrs. Sneider's suicidal tendencies and inquiring regarding her presence in the hotel, that liability may be imposed in this case for negligence in preventing Mr. Sneider from saving decedent's life.[2]

The final argument espoused by defendant, like the argument founded on Appling v. Jones, *supra,* concerns the question of causation. Without fully explaining the relevance of this argument, defendant cites Andrews & Co. v. Kinsel, 114 Ga. 390, 40 S.E. 300 (1901) for the following proposition: "[W]here there has intervened between the defendant's negligent act and the injury, an independent illegal act of a third person, producing the injury, and without which it would not have happened, the latter is properly held the proximate cause of the injury, and the defendant is excused." *Id.* at 391, 40 S.E. at 300. Once again defendant has cited a correct legal principle, but there is no showing of the applicability of that principle to the facts of the instant case. Defendant has not conceded an initial, negligent act which would trigger a causation inquiry in the first instance; and more importantly, defendant has not set forth facts showing that the chain of causation should be deemed broken by the intervening, illegal act of a third party. Furthermore, there are circumstances even when the illegal act of a third party may not excuse an innkeeper from liability to an injured guest. *See* Adamson v. Hand, 93 Ga.App. 5, 90 S.E.2d 669 (1955). In *Adamson,* the plaintiff sued the proprietor of a bar for injuries resulting from a fight between two customers. The essential question in that case, as in the instant case, was not the question of causation, but rather whether the defendant breached a duty of care owed to its customer. In ruling for plaintiff, the Court stated the following:

> "[I]t is the duty of the proprietor to protect [a customer] from injury caused by the misconduct, not only of his own employees, but of other customers and third persons. If, therefore, there is any reasonable apprehension of danger to such a customer from the unlawful conduct of [others], or if a personal injury from

---

2. As in the *Thomas* case, negligent performance of a rescue effort, or deliberate interference with rescue efforts by third parties is a traditional basis for imposing liability on a "Good Samaritan." Similarly, negligently preventing a prospective rescue may, in some circumstances, warrant imposition of liability:

> Even though the defendant may be under no obligation to render assistance himself, he is at least required to take reasonable care that he does not prevent others from giving it. . . . The principle has been carried even to the length of holding that there is liability for interfering with the possibility of such aid, before it is actually

being given. Such acts are of course "misfeasance," but *the real basis of liability would appear to be the interference with the plaintiff's opportunity of obtaining assistance.* . . .

W. Prosser, 8 Handbook of the Law of Torts § 56 at 348 (4th ed. 1971) (emphasis added). *See, also* United States v. Gavagan, 280 F.2d 319, 328–29 (5th Cir. 1962). Even if defendant herein were held to the "no duty" standard of the priest and the Levite, plaintiffs' disputed factual contentions regarding the various telephone calls to defendant's hotel indicate a potentially triable issue which would preclude entry of summary judgment as a matter of law.

the misconduct of other customers or third persons [can be] prevented by the proprietor by the exercise of ordinary care and diligence, he may be guilty of negligence for his failure to use it, and consequently responsible in damages." Moore v. Smith, 6 Ga. App. 649(1), 65 S.E. 712.

*Id.* 93 Ga.App. at 8, 90 S.E.2d at 671. Thus, like the hospital and jail cases, the proper inquiry in the case *sub judice* should focus on the proper standard of care applicable under the facts and whether that standard has been breached, rather than on the question of causation. Defendant would have this court adopt a rule that suicide invariably is a supervening cause which excuses the initial tort-feasor from liability for wrongful death. Alternatively, defendant would have this court adopt a rule that would apply such a limited standard of care to the hotel-guest relationship that a hotel may never be held liable for the suicide of one of its guests. In fact, the standard of care supported by defendant is in effect no standard at all; therefore defendant's arguments are not only unjustified under the facts of this case, they are contrary to existing law. *Id. Cf.* Hicks v. M.H.A., Inc., 107 Ga.App. 290, 129 S.E.2d 817 (1963). As a result, defendant's motion must be rejected.

In sum, defendant has based its motion on the legal contention that under no circumstances may a hotel be held liable for the suicide of one of its guests. In this regard, one commentator has stated the following: "The only type of defendants . . . against which liability for suicide has been alleged are hospitals, sanitariums, and similar institutions, although they are not the only ones against which such claims could conceivably .be raised." Annot., 11 A.L.R.2d 751 § 13 at 775. The claim has now been raised and this is *conceivably* a case where liability should be imposed. In any event, in light of the uncertainty in this area of law, and in light of the facts adduced by plaintiffs in opposition to the instant motion, defendant has not carried its burden under Rule 56(c) and judgment may not be entered in its behalf. Accordingly, defendant's motion for summary judgment is denied.

It is so ordered.